Filed 10/7/24  M.G. v. Superior Court CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

<table>
<tr><td>

M.G.,

    Petitioner,

      v.

THE SUPERIOR COURT OF MERCED COUNTY,

    Respondent;

MERCED COUNTY HUMAN SERVICES AGENCY,

    Real Party in Interest.

</td><td>

F088321

(Super. Ct. No. 22JP-00166-A)

**OPINION**

</td></tr>
</table>

### THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  James LaPorte, Judge.  (Retired judge of the Merced Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

M.G., in pro. per., for Petitioner.

No appearance for Respondent.

---

[*]    Before Levy, Acting P. J., Meehan, J. and DeSantos, J.

Forrest W. Hansen, County Counsel, and Jennifer L. Tran, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

Petitioner M.G. (mother), in propria persona, seeks an extraordinary writ (Cal. Rules of Court,[1] rule 8.452) from the juvenile court's order made at a contested Welfare and Institutions Code[2] section 387 supplemental disposition hearing setting a section 366.26 hearing for October 16, 2024, as to her minor daughter, R.C. She also requests a stay of the section 366.26 hearing. In addition, while her petition was pending, she filed a request to enter default to the real party in interest, the Merced County Human Services Agency (agency).[3]

We conclude mother's petition fails to comport with the procedural requirements of rule 8.452 regarding extraordinary writ petitions. We deny her request to enter default, dismiss the petition, and deny her request for a stay.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 29, 2022, the agency filed a juvenile dependency petition on behalf of then five-year-old R.C. alleging she came within the court's jurisdiction under section 300, subdivision (b)(1). It was specifically alleged that R.C. had suffered or was at risk of suffering harm due to the parents' failure to supervise her, protect her from a care provider with whom she was left, and failure to care for her due to substance abuse.

R.C. had had a seizure and was taken to the hospital, and it was discovered upon examination that she had methamphetamine in her system. R.C. had several medical

---

[1] All further rule references are to the California Rules of Court.

[2] All further undesignated statutory references are to the Welfare and Institutions Code.

[3] The request was filed on September 23, 2024, which was the day the agency's response was due. The agency filed a timely response later that day.

conditions and special needs and noted to be "an especially vulnerable child." She was nonverbal due to her developmental disability.

Mother had no explanation as to how R.C. came into contact with methamphetamine. She denied current methamphetamine use but admitted to having a history of use and serving a three-year prison term in relation to it. She stated the last time she used methamphetamine was in February 2008. She further reported her adult niece, who she had heard used methamphetamine, provided part-time care for R.C. Mother had adopted R.C. in February 2021 as a result of an agreement between she and R.C.'s biological mother. Mother and J.G., R.C.'s biological and presumed father (father), were married.

Father admitted to current methamphetamine use but had no explanation for how R.C. came into contact with it. He denied using the day R.C. was hospitalized. He had last used methamphetamine "a couple of month[]s ago" and that he had substance abuse issues dating back to his early twenties. He admitted to smoking marijuana the day R.C. was admitted to the hospital. Father later explained he was watching R.C. that day, and he believed mother's niece put methamphetamine in R.C.'s bottle.

R.C. was taken into protective custody by law enforcement, and the juvenile court ordered R.C. detained from the parents on December 30, 2022.

The agency subsequently reported mother's criminal history dated back to 1993 consisting of several felonies, including fraud offenses, for which she was sentenced to prison time; a 2004 conviction for simple possession of a controlled substance; and a 2011 conviction for possession of a controlled substance for sale, for which she was sentenced to four years in prison. The latter was her most recent conviction.

Mother tested positive for methamphetamine on January 3, 2023. Mother denied using methamphetamine and explained her positive drug test by stating she was taking Sudafed for allergies, phentermine to curb her appetite, and cystex for a bladder infection, which were all prescribed to her. Mother was also asked about domestic violence, and

3.

she reported domestic violence in a previous relationship. She and father had verbal altercations that on occasion resulted in her calling the police, but never occurred in front of R.C.

A combined jurisdiction/disposition hearing was conducted on March 6, 2023. The juvenile court found R.C. came within its jurisdiction under section 300, subdivision (b)(1) and ordered family reunification services for the parents. Mother's case plan consisted of staying free from methamphetamine, marijuana, or other substances; refraining from using verbal and physical abuse and demonstrating she understands how negative relationships affect her child's life by discontinuing abusive relationships; consistently, appropriately, and adequately parenting R.C.; and obtaining stable housing. She was to complete a domestic violence screening and follow treatment recommendations, complete a parenting class, actively look for housing, complete a drug and alcohol assessment and follow treatment recommendations, and participate in random drug testing.

Ahead of the six-month review hearing, the agency recommended family reunification services be continued to the parents. Mother filed for divorce from father in June 2023 and reported filing a restraining order against him allowing peaceful contact. She had started a new relationship and lived with her boyfriend and his children. Mother was employed and was planning to work only during the time R.C. is in school, so she could care for her.

During the review period, mother consistently visited with R.C. and demonstrated appropriate parenting skills during the visits. She started participating in mental health services and completed an in-depth domestic violence assessment. The assessor recommended she attend a 34-week batterer's intervention program, which mother did not agree with. She completed a parenting class. She attended a drug and alcohol assessment and did not require services. She was inconsistent with drug testing; she failed to show several times, and one test was not completed because "[t]here was an

issue with temperature" with her sample and mother did not stay to re-test. Mother provided some negative urine tests but consistently refused to submit to hair follicle tests, reporting it was against her Native American tribe's[4] customs to cut her hair.

The six-month review hearing was conducted on October 3, 2023. Mother contested the recommendation, as she was requesting the return of R.C. on family maintenance services. The court ordered family reunification services to continue and set an interim hearing to see if mother could start trial visits with R.C.

R.C. started a trial visit with mother on January 25, 2024. The visit began well, and mother did not appear to have any problems providing day-to-day care for R.C. Her drug testing attendance improved, and she consistently tested negative for substances in urine screens but continued to refuse hair follicle testing. For the 12-month review hearing, the agency was recommending family reunification services be terminated as to father, and mother receive family maintenance services.

The 12-month status review hearing was conducted on March 7, 2024, and the court followed the agency's recommendation.

In April 2024, the agency received a call that law enforcement reported to a domestic violence call at mother's residence. Mother denied that she and her boyfriend argued. The agency discovered through further investigation that there was a domestic violence incident in March 2024, where mother confronted her boyfriend with an ax, and he had requested an emergency protective order against her.

In May 2024, the agency received a series of referrals alleging general neglect and physical abuse of R.C. by mother. It was reported mother had hit R.C. across the face multiple times and had been smoking methamphetamine in her presence. It was further reported mother obtained fake urine to use for her drug tests. The agency was provided

---

[4]     Mother is an active member of the Ohlone/Costanoan Esslen Nation of Monterey Tribe, which is not a federally recognized tribe. On October 3, 2023, the juvenile court found ICWA did not apply.

with a photograph of mother appearing to be smoking methamphetamine in the garage of the residence.

In investigating the referrals, the agency learned from R.C.'s school that since returning to mother's care, R.C. had been absent 18 times and late 18 times, with the majority of the tardy incidences being thirty minutes or more. The school further reported that R.C. had been "acting completely different" since being returned to mother, including being tired and failing asleep and not properly being in the braces she needs to walk. It was further reported R.C. "[n]o longer feels, or acts content." In addition, R.C. had missed multiple medical appointments.

In attempting to contact mother at her residence, the social worker ran into a member of the Fugitive Recovery Team who later served an arrest warrant on a man who was reported to be living in the garage of the residence and who was reported to smoke methamphetamine there. When the social worker eventually contacted mother, R.C. was not with her, and mother reported she was with mother's friend and failed to cooperate in contacting the friend so R.C. could be assessed by the social worker. Mother denied domestic violence, that she had been tampering with urine samples, and asserted that the photo of her smoking methamphetamine was taken in 2022.

R.C. was eventually located and removed from mother's residence. She was placed in a foster home, which the agency reported was a concurrent placement for adoption.

The agency reported that mother continued to refuse to submit to a hair follicle drug test due to tribal rules, but the agency confirmed with a tribal representative that the tribe did not prohibit her from getting her hair cut. Despite having this information, mother continued to refuse to submit to hair follicle testing.

On May 6, 2024, the agency filed a supplemental petition pursuant to section 387 alleging placement with mother had not been effective in the protection of R.C. Specifically, the petition alleged it had been reported mother hit R.C.; continued to use

methamphetamine while caring for R.C.; engaged in domestic violence despite receiving services; allowed individuals who use methamphetamine into her home; and failed to provide for R.C.'s medical, emotional, physical, and educational needs, as evidenced by R.C.'s absences and tardiness at school and missing several medical appointments.

The initial hearing on the supplemental petition was conducted on May 7, 2024. The court found R.C.'s placement with mother was no longer appropriate and ordered her temporarily removed from mother's custody. The matter was set for a supplemental disposition hearing.

The agency recommended the juvenile court find the section 387 petition true, terminate mother's reunification services, and set a section 366.26 hearing. The agency reported that since R.C.'s removal from mother, R.C.'s school had seen a complete positive change in R.C.'s attentiveness, appetite, and overall mood. She was not whiney and fussy but alert and happy. Following the initial hearing, mother made herself available to drug test but refused to provide a sample if she was observed and refused to submit to hair follicle testing. In June 2024, mother was arrested for possession of unlawful paraphernalia, possession of a controlled substance (methamphetamine), and battery against an intimate partner.

The supplemental disposition hearing was conducted on June 25, 2024. Mother did not offer any additional evidence or testimony, but her attorney indicated she was exercising her right against self-incrimination and argued against termination of reunification services. Counsel argued mother's recent arrest was a "temporary lapse," and mother was entering an inpatient drug treatment program in two days. Mother sought an additional three months of reunification services so that she would have time to complete her program and demonstrate her sobriety.

In ruling, the juvenile court noted that given the recent allegations regarding drug use and domestic violence, mother had not dealt with the original problem that led to R.C.'s initial removal. The court also noted R.C.'s developmental and physical

7.

disabilities and special needs, and that she was not attending school when in mother's care, that "in this particular circumstance, [mother], because of the severe nature of the disability of the child, is not able to meet that, even with the class, given with her own issues of drug problems."

The court found the allegations in the supplemental petition was true and that the previous disposition has not been effective for rehabilitation and protection of the minor "because [mother] had been engaging in domestic violence at home while the child was around. And she wasn't able to stay clean and sober from illegal or controlled substance." The court ordered reunification services would not continue because it was beyond 18 months and for the aforementioned reasons. The court set a section 366.26 hearing for October 16, 2024.

## DISCUSSION

As a general proposition, a juvenile court's rulings are presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) A parent seeking review of the juvenile court's orders made at the setting hearing must file an extraordinary writ petition in this court substantively addressing the specific issues to be challenged and supporting that challenge by an adequate record. The purpose of such petitions is to allow the appellate court to achieve a substantive and meritorious review of the juvenile court's findings and orders issued at the setting hearing in advance of the section 366.26 hearing. (§ 366.26, subd. (*l*)(4).)

We must first address the adequacy of mother's writ petition. Rule 8.452 sets forth the content requirements for an extraordinary writ petition, including that a petition "must be accompanied by a memorandum," which "must provide a summary of the significant facts, limited to matters in the record"; "must state each point under a separate heading or subheading summarizing the point and support each point by argument and citation of authority"; and "must support any reference to a matter in the record by a citation to the

record" and "explain the significance of any cited portion of the record and note any disputed aspects of the record." (Rule 8.452(a), (b)(1)-(3).)

We liberally construe a writ petition in favor of its adequacy where possible, recognizing that a parent representing him or herself is not trained in the law. (See rule 8.452(a)(1).) Nevertheless, the petitioner must at least articulate a claim of error and support it by citations to the record. Failure to do so renders the petition inadequate in its content and the reviewing court need not independently review the record for possible error. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

Mother's petition is inadequate. She filed a "PETITION FOR EXTRAORDINARY WRIT" (JV-825) form and has checked the boxes indicating she is requesting that the setting order be vacated, the matter be remanded for a hearing, reunification services be provided/continued, visitation be ordered between she and R.C., R.C. be returned to her custody, and dependency be terminated. Under the section on the form requiring her to state why the court's order setting a section 366.26 hearing was erroneous, she writes, "Minor was removed under false pretense and mother has done everything to satisfy court's request." Under the section requiring her to state the factual basis of the petition, she writes, "When child was first removed in Dec. of [20]22 it was unfounded due to child did not test positive for meth she tested positive for amphetamines due to her doctor prescribed medication[.] Lab report from hospital shows this. When child was removed on 5-2-24 it was not fully investigated[;] it was from a photo taken a long time ago by mother[']s niece and she was havin[g] conflict with mother and wanted revenge." Mother also requests a stay of the section 366.26 hearing, and in support of the request, alleges R.C. is being harmed in her foster parents' home. Mother attached no points and authorities to her petition, does not make any citation to legal authority or to the record, and does not set forth any reviewable claims of error justifying any of the requested relief.

9.

To the extent mother's allegation that R.C.'s removal/supplemental petition was improperly based on the photo of her smoking methamphetamine is an argument that the juvenile court erred by finding the section 387 petition true, her allegation does not constitute an adequate legal claim.  In order to state a reviewable claim, mother would have had to make a reasoned argument, taking into account the applicable standard of review, as well as her burden of demonstrating error, showing "there is no evidence of a sufficiently substantial nature to support" the court's order sustaining the section 387 petition.  (See *In re D.D.* (2019) 32 Cal.App.5th 985, 990 [order sustaining a section 387 petition is reviewed for substantial evidence, and the reviewing court must view the record in favor of the juvenile court's order and affirm the order even if other evidence supports a contrary finding].)  Mother's allegation does not address the totality of the evidence supporting the court's finding that the petition was true and therefore does not state a reviewable claim.

Because mother's petition fails to comport with rule 8.452, we dismiss it.

## DISPOSITION

The petition for extraordinary writ is dismissed.  The decision is final in this court immediately.  (Rules 8.452(i), 8.490(b)(1)(A).)  The request for a stay is denied.  Mother's September 23, 2024 request for default is denied.